[No. G001458. Fourth Dist., Div. Three. Apr. 30, 1986.]

CHEVRON U.S.A., INC., Cross-complainant and Respondent, v.
BRAGG CRANE & RIGGING COMPANY,
Cross-defendant and Appellant.

640

**COUNSEL**

Pray, Price, Williams & Russell and James B. Russell for Cross-defendant and Appellant.

Lawler, Felix & Hall, Richard C. Neal, J. Michael Echevarria and Edwin W. Duncan for Cross-complainant and Respondent.

**OPINION**

**SONENSHINE, J.**—Bragg Crane & Rigging Company appeals the granting of declaratory relief in favor of Chevron U.S.A., Inc. (Chevron). We affirm.

On August 1, 1977, Bragg and Chevron entered into a form contract under which Bragg was to provide crane services for Chevron. The contract, prepared by Chevron, included liability and insurance provisions. Bragg was required to indemnify and hold Chevron harmless for damages, unless the damages resulted from the sole and exclusive active negligence or willful misconduct of Chevron.

The insurance provisions required, in part, that Bragg obtain "Comprehensive General Bodily Injury Liability Insurance" for itself and Chevron of not less than $500,000 per occurrence. Bragg obtained insurance from American Universal Insurance Company for the amount required. However, the policy included a $100,000 deductible.[1]

---

[1]The liability and insurance provisions appear in sections 5 and 6 of the terms and conditions of the contract. They provide in part: "LIABILITY [¶] 5.1 General Liability: CONTRACTOR shall indemnify and save harmless the indemnitees from and against any and all loss, damage, injury, liability, and claims thereof for injury to or death of a person, including an employee of CONTRACTOR or an indemnitee, or loss of or damage to property (except property subject to Sections 5.2 and 5.3 of these Terms and Conditions), resulting directly or indirectly from CONTRACTOR'S performance of this Agreement, including, but not limited to, the use by CONTRACTOR of staging or other equipment provided by COMPANY or others, regardless of the negligence of, and regardless of whether liability without fault is imposed or sought to be imposed on, one or more of the indemnitees, except to the extent that such indemnity is void or otherwise unenforceable under applicable law in effect on or validly retroactive to the date of this Agreement and except where such loss, damage, injury, liability or claim is the result of active negligence or willful misconduct of an indemnitee and is not contributed to by any act of, or by any omission to perform some duty imposed by law or contract on, CONTRACTOR, its subcontractor or either's agent or employee.

"INSURANCE [¶] Insurance Required: Without in any way limiting CONTRACTOR'S liability pursuant to Section 5 of these Terms and Conditions, CONTRACTOR shall maintain the following insurance.

"6.13 Comprehensive General Bodily Injury Liability Insurance. Such insurance shall include the following coverages: Broad Form Contractual Liability, Personal Injury Liability, Completed Operations, and Products Liability. The limits of liability of such insurance shall be not less than $500,000 per occurrence.

"6.2 Policy Endorsements: The above insurance shall include a requirement that the insurer provide COMPANY with 30 days' written notice prior to the effective date of any cancellation or material change of the insurance. The insurance specified in Section 6.11 of these Terms and Conditions shall contain a waiver of subrogation against the indemnitees. The insurance specified in Sections 6.12, 6.13, 6.14 and 6.15 of these Terms and Conditions shall [¶] (a) name the indemnitees as additional insureds; [¶] (b) provide that said insurance is primary coverage with respect to all insureds; and [¶] (c) contain a Standard Cross Liability Endorsement or Severability of Interest Clause.

"6.3 Evidence of Insurance: CONTRACTOR shall—before commencing the work—provide COMPANY with certificates or other documentary evidence of the above insurance, satisfactory to COMPANY. Form GO-279-12 may be used for this purpose."

On March 3, 1978,[2] toxic hydrogen sulfide fumes escaped from a fuel gas pump at the refinery injuring two Bragg employees, Buddy Jack Vandagriff and Frank Dale Stainbrook. The injuries were caused by the admitted sole negligence of Chevron.

Vandagriff and Stainbrook sued Chevron for personal injuries. Bragg's workers' compensation carrier paid their benefits, but sued Chevron to recover these payments. Chevron tendered defense of these actions to Bragg and American. Bragg denied any obligation to Chevron. It claimed it was not required under the contract to obtain insurance for Chevron for claims arising from Chevron's sole negligence. Bragg advised American not to provide insurance coverage or to defend the action. American, however, agreed to defend Chevron under a reservation of rights.

Chevron filed the underlying cross-complaint for declaratory relief against Bragg and American. American withdrew its reservation of rights, defended Chevron, and paid $72,500, settling with the two employees and Bragg's workers' compensation carrier. Chevron dismissed its cross-complaint against American, but in a separate action American sued Chevron for recovery of the $72,500.

The trial court granted Chevron's declaratory relief action against Bragg. Bragg was ordered to reimburse Chevron for any monies Chevron was required to pay to American or Bragg's workers' compensation carrier. Bragg appeals, arguing the contract did not require it to provide insurance for Chevron because the injuries were caused by Chevron's sole negligence.

Did the trial court err in finding the contract required Bragg to provide insurance coverage for Chevron even when the injury was caused by Chevron's sole negligence? ■ ■■■ We think not and affirm.[3]

---

[2]This date appears in the complaint. We note, however, appellant's brief cites March 8, 1978, as the date of the accident and respondent's brief denotes March 2, 1979. These discrepancies are not material. The insurance was in effect on the date of the accident.

[3]The parties argue over our standard of review. Bragg suggests there was no conflict in the extrinsic evidence. Thus, it suggests we must independently interpret the contract. It is right, but for the wrong reason. There was conflicting evidence as to the parties' intent. George M. Bragg testified as to Bragg's intent and a Chevron employee opined as to Chevron's expectations. But Bragg has missed the point. The evidentiary facts themselves are not in conflict. The parties only disagree *about the inferences* to be drawn.

We independently review the contract because "it is only when conflicting inferences arise from *conflicting evidence*, not from uncontroverted evidence, that the trial court's resolution is binding. 'The very possibility of . . . conflicting inferences, actually conflicting interpretations, far from relieving the appellate court of the responsibility of interpretation, signalizes the necessity of its assuming that responsibility.'" (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866, fn. 2 [44 Cal.Rptr. 767, 402 P.2d 839] quoting dissenting

■ Bragg contends the "sole negligence" exception applies to the contract as a whole. It claims, therefore, it did not have to provide insurance coverage for this injury. In support of this contention, Bragg argues contracts must be construed from their four corners, and the intention of the parties must be collected from the entire instrument and not detached portions. (*Indenco, Inc.* v. *Evans* (1962) 201 Cal.App.2d 369 [20 Cal.Rptr. 90].) We agree with the premise, but not the conclusion.

"A contract entered into for the mutual benefit of the parties is to be interpreted so as to give effect to the main purpose of the contract and not to defeat the mutual objective of the parties. (*Healy Tibbitts Constr. Co.* v. *Employers' Surplus Lines Ins. Co.* (1977) 72 Cal.App.3d 741, 748 [140 Cal.Rptr. 375].)" (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 591 [177 Cal.Rptr. 268].) Bragg's interpretation of the contract is inconsistent with the objective of the insurance provisions. Chevron was to be protected against *all risks* which arise when a contractor comes to the refinery. Bragg's interpretation would leave Chevron without protection when it was most needed: when a claim arose from Chevron's sole negligence.[4]

The authorities relied on by respondent and the trial court below substantiate this position. *Price* v. *Zim Israel Navigation Co., Ltd.* (9th Cir.

---

opinion in *Estate of Rule* (1944) 25 Cal.2d 1, 11 [152 P.2d 1003], italics added.)

Thus, "it is only when the foundational extrinsic evidence is in conflict that the appellate court gives weight to anything other than its de novo interpretation of the parties' agreement. (See also *Garcia* v. *Trust* [*sic*] *Ins. Exchange* (1984) 36 Cal.3d 426, 439 [204 Cal.Rptr. 435, 682 P.2d 1100]; *Pasadena Police Officers Assn.* v. *City of Pasadena* (1983) 147 Cal.App.3d 695, 707 [195 Cal.Rptr. 339].)" (*Medical Operations Management, Inc.* v. *National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891 [222 Cal.Rptr. 455].) We therefore "review the Agreement in the context of the extrinsic evidence presented and make our own independent determination of [its] meaning . . . ." (*Id.*, at p. 892.)

[4]Chevron explains the sole negligence exception in the indemnity provision reflects legal limits on its right to obtain a contractual indemnity.

Civil Code section 2782 was enacted in 1967 and amended in 1980, 1982 and 1985. The section in effect in 1977-1978, the contract year, states: "All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract and which purport to indemnify the promisee against liability for damages for (a) death or bodily injury to persons, (b) injury to property, (c) design defects or (d) any other loss, damage or expense arising under either (a), (b), or (c) from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to such promisee, are against public policy and are void and unenforceable; provided, however, that this provision shall not affect the validity of any insurance contract, workmen's compensation or agreement issued by an admitted insurer as defined by the Insurance Code."

The subsequent amendments do not alter the statute's prohibition against contracting for indemnity for one's sole negligence.

There is no similar limit on obtaining insurance. Such a limit would run contrary to a fundamental purpose of insurance, namely, to protect *against* liability for one's own negligence.

1980) 616 F.2d 422, decided under California law, is instructive. In *Price*, shipowner Zim contracted with International Transportation Service for stevedoring services. The contract required Zim be named an additional insured under ITS' comprehensive liability insurance policy. It required Zim to indemnify ITS against claims arising from Zim's negligence. Zim was named an additional insured under ITS' comprehensive liability insurance policy with Tokio Marine & Fire Insurance Company.

Tokio argued it owed Zim no coverage "where Zim was directly liable for an injury . . . ." (*Id.*, at p. 426.) Tokio also argued this conclusion was necessary because "Zim agreed to indemnify and hold harmless ITS against all claims arising from Zim's negligence or from the unseaworthiness of Zim's vessels or equipment." (*Ibid.*) The court disagreed and found Tokio owed full insurance coverage to Zim as an additional insured.[5]

In *Gulf Oil Corp.* v. *Mobile Drilling Barge or Vessel* (E.D. La. 1975) 441 F.Supp. 1, affd. *per curiam,* 565 F.2d 958 (5th Cir. 1978), Shell Oil Company hired Ocean Drilling and Exploration Company (ODECO) to drill a relief well near a burning Shell oil platform. Their contract required Shell be named an additional insured in ODECO's policies. ODECO used the drilling barge Margaret to drill the relief well, and in the process, damaged Gulf's underwater pipeline.[6] ODECO's insurance carrier, Highlands, claimed coverage was afforded to Shell "only for claims arising out of the negligence of ODECO, the named insured." (*Id.*, at p. 6.)[7] But the court found the Highlands policy "clearly provided coverage to Shell for the damage to Gulf's pipeline." (*Id.*, at p. 7.)

---

[5]The court in *Voison* v. *O.D.E.C.O. Drilling, Inc.* (E.D. Texas 1982) 557 F.Supp. 715 disagreed with the conclusion of the *Price* court. Both cases were maritime and involved the Longshoremen's and Harbor Workers' Compensation Act. The *Voison* court determined this Act prohibited the owner of a drilling rig from requiring the employer of its maritime workers to name the owner of the rig as an additional insured. The *Price* court allowed such additional insured provisions as merely initially allocating the burden of procuring insurance. The instant case does not involve the Longshoremen's Act, and we rely on *Price* for its general proposition parties may initially allocate the burden of procuring insurance.

[6]"Gulf then sued ODECO and Shell for damages to the pipeline. Shell filed a third party complaint against Highlands Insurance Company (Highlands) and The Home Indemnity Company (Home), alleging Shell had been named an additional insured in policies issued by Highlands and Home to ODECO. Shell asked that Highlands and Home be held liable for any judgment rendered against Shell. . . ." (*Gulf Oil Corp.* v. *Mobile Drilling Barge or Vessel, supra,* at p. 3, fn. omitted.)

[7]The Home Indemnity Company made a similar argument. However, the court found Home liable only for coverage in excess of $5 million. The total claim was $1,185,485.76, so Home was not required to pay any part of the claim. (*Id.*, at p. 11.)

Appellant's brief quotes out of context the court's statement it need not decide whether the Home policy provided coverage for damages arising out of Shell's sole negligence. This was because the Home policy provided only excess coverage. The same was not true of the Highlands policy.

The *Gulf Oil* court addressed the proper interpretation of the contract as follows: "[I]f Highlands' interpretation that Shell was covered only for claims arising out of the negligence of ODECO were adopted, the coverage that all parties intended Shell should have, and which Shell paid for, would be rendered illusory. Under such interpretation, Shell would be deprived of coverage where neither Shell nor ODECO were negligent and the loss was caused by the negligence of a third party, as well as where Shell was solely negligent. We, therefore, decline to accept Highlands' interpretation of the policy." (*Ibid.*) Bragg's interpretation of the contract would leave Chevron in a similar situation.

Moreover, the actions of the parties support this interpretation. Chevron paid for that coverage through Bragg's contract charges. If Bragg did not believe it was obligated to provide insurance covering Chevron's sole negligence, it could have excluded this coverage from the policy it obtained and charged Chevron accordingly. It did not.

The insurance obtained by Bragg named Chevron as an additional insured. There was no exclusion for accidents caused by Chevron's sole negligence. The gap in Chevron's coverage resulted from the policy's $100,000 deductible, which was not contracted for or agreed to by Chevron.[8]

We find support for this reasoning in *Gulf Oil Corp.* v. *Mobile Drilling Barge or Vessel, supra,* 441 F.Supp. 1, where the court looked to similar factors in support of its decision. That court noted "the policy contains no express exclusion of coverage for damages arising out of the sole negligence of the additional insured. Had it been the intent of all parties to the contract to exclude coverage for damages arising out of Shell's sole negligence, it would have been simple to express this intent clearly in the policy." (*Id.,* at p. 7.) Further, the court in *Gulf* found "Shell paid for insurance coverage as part of the daily rental it paid for the Margaret." (*Ibid.*) Similarly, in this case, the cost of the insurance was included in the cost of the contract.[9]

■ Relying on *Fahey* v. *Gledhill* (1983) 33 Cal.3d 884 [191 Cal.Rptr. 639, 663 P.2d 197], Bragg also impliedly contends a party to a contract to procure insurance must expressly state the insurance is to cover its own

---

[8]Bragg failed to comply with the terms of the contract when it obtained insurance with a $100,000 deductible. (See fn. 1.) Further, the contract required Bragg to furnish Chevron with "certificates or other documentary evidence" of insurance. The certificates provided did not disclose the deductible.

[9]George Bragg testified the cost of the insurance premiums would be one of Bragg's costs of doing business. Edmund Fey, Jr., a claims supervisor for Standard Oil Company of California, testified Chevron expected the cost of the required insurance to be included in the contract charges.

negligence. But *Fahey* is inapplicable. It concerned the validity of an exculpatory clause in a contract for yacht repairs between plaintiff, a yacht owner, and defendant, a marine repair facility. The yacht sank due to defendant's negligence and defendant claimed the exculpatory clause relieved it of liability. The case was decided under federal admiralty law. The court held the language of the agreement to exclude negligence liability must be clear and unequivocal and reflect the legal responsibility of the parties. Here Chevron did not contract to exculpate itself from liability. Rather, it contracted for the procurement of insurance. Bragg's contention is therefore unpersuasive.[10]

Bragg maintains the form contract was an adhesion contract because Chevron prepared it and the parties had unequal bargaining power. Bragg suggests it reasonably expected Chevron to be solely responsible for its own negligent acts and it would be unconscionable to make Bragg responsible for them.[11]

Bragg's argument is not persuasive. Chevron's size may give it bargaining power superior to Bragg's.[12] However, a standardized contract between unequals is enforceable unless it defeats the reasonable expectations of the weaker party or is unconscionable. Neither is the case here. The contract did not defeat Bragg's reasonable expectations. At trial, Mr. Bragg testified he was familiar with the insurance provision of the contract and Bragg had entered into similar agreements with Chevron on other occasions. He testified Bragg regularly attempted to maintain the insurance. As noted *ante,* he also testified the premiums would be one of Bragg's costs of doing business.

---

[10]See *Dillingham Tug* v. *Collier Carbon & Chemical Corp.* (9th Cir. 1983) 707 F.2d 1086, 1089, where the court distinguished a contract to procure insurance and an exculpatory clause. The court stated the public policy factors limiting exculpatory clauses do not carry the same weight in the case of insurance provisions. Those factors were discouraging negligence by making wrongdoers pay for damage they cause and protecting those in need of goods and services from being overreached by others with the power to drive hard bargains. The court further stated there are public policy considerations in *favor* of insurance provisions.

[11]A "contract of adhesion" is a "'standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].)" (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817 [171 Cal.Rptr. 604, 623 P.2d 165].) Such contracts are fully enforceable with two judicially imposed limitations. First, a contract that does not fall within the reasonable expectations of the "adhering" party will not be enforced against him. Second, even if consistent with the parties' reasonable expectations, a contract will not be enforced if it is unduly oppressive or "unconscionable." (*Id.,* at pp. 819-820.)

[12]Chevron's counsel at trial conceded it "is a very large company" and Bragg is "not the size of Chevron." George Bragg, president and chief executive officer of Bragg, estimated Bragg's gross sales for 1977-1978 (the contract year) as $5.5 to $6.5 million.

The enforcement of these insurance provisions is not unconscionable. Bragg's obligation was to purchase insurance and the cost of that insurance would be included in the rates charged to Chevron. The contract did *not* require Bragg to be responsible itself for Chevron's negligent acts. The requirements of the contract were reasonable, not unconscionable. This contract is not unenforceable as a contract of adhesion.[13]

We affirm the trial court's judgment. The matter is remanded to the trial court for determination of Chevron's reasonable attorney fees and costs incurred on appeal. "Although this court possesses the power to appraise and fix attorney fees on appeal, the better practice is to remand the cause to the trial court for the determination of such fees. [Citations.]" (*Schoolcraft v. Ross* (1978) 81 Cal.App.3d 75, 82 [146 Cal.Rptr. 57].)

Trotter, P. J., and Wallin, J., concurred.

---

[13]Bragg makes two additional arguments. First, Bragg argues a party who creates a hazardous condition is actively negligent. But Chevron concedes, for purposes of this action, the injuries were caused by Chevron's sole negligence.

Second, Bragg argues an indemnity provision will be strictly construed against the indemnitee. This argument is not helpful because the construction of the contract's liability provision is not in question. Both parties agree the indemnity provision excludes coverage for Chevron's sole negligence.