Filed 12/10/24  Earl M. Hill Family Limited Partnership v. Trader Joe's Co. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| EARL M. HILL FAMILY LIMITED PARTNERSHIP, et al.,<br><br>Cross-defendants, Cross-complainants, and Appellants<br><br>v.<br><br>TRADER JOE'S COMPANY, INC.,<br><br>Cross-complainant, Cross-defendant, and Respondent. | 2d Civil No. B324784<br>(Cons. w/ No. B332896)<br>(Super. Ct. No. 17CV00966)<br>(Santa Barbara County)<br><br>ORDER MODIFYING OPINION<br>[No Change in Judgment] |

THE COURT:

It is ordered that the opinion filed herein on December 3, 2024, be modified as follows:

On the last page, the listing for the attorneys representing Cross-complainant, Cross-defendant and Respondent is revised to read:

Horvitz & Levy, Justin R. Sarno; MVPF Law, Kristin Mathis; DBL Law Group, Darren Le Montree, for Cross-complainant, Cross-defendant, and Respondent.

There is no change in the judgment.

GILBERT, P. J.　　　　　YEGAN, J.　　　　　CODY, J.

Filed 12/3/24  Earl M. Hill Family Limited Partnership v. Trader Joe's Co. CA2/6 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| EARL M. HILL FAMILY LIMITED PARTNERSHIP, et al., <br><br> Cross-defendants, Cross-complainants, and Appellants <br><br> v. <br><br> TRADER JOE'S COMPANY, INC., <br><br> Cross-complainant, Cross-defendant, and Respondent. | 2d Civil No. B324784 (Cons. w/ No. B332896) (Super. Ct. No. 17CV00966) (Santa Barbara County) |

A car drove through the front doors of a Trader Joe's store in 2016.  Before entering the store, the car struck and severely injured a customer standing on the sidewalk.  The customer sued respondent Trader Joe's Company, Inc. (Trader Joe's) and appellants Cal Real Properties, L.P. (Cal Real), Earl M. Hill

Family Limited Partnership (Hill), and The Towbes Group, Inc. (Towbes). He alleged they created a dangerous condition for pedestrians by failing to install adequate barriers between the curb and the doors.

The customer settled his case for $2.5 million before trial. Trader Joe's paid $1.25 million. Cal Real, Hill, and Towbes paid the other $1.25 million. They proceeded to trial on their cross-complaints for indemnity. The trial court found the incident resulted from the negligent construction and maintenance of the shopping center's common areas. It entered judgment against Cal Real, Hill, and Towbes for $1.25 million pursuant to a lease provision requiring the appellants to defend and indemnify Trader Joe's for such actions. They appeal the judgment as well as the post-judgment order awarding attorney's fees to Trader Joe's.

We will affirm.

FACTUAL AND PROCEDURAL HISTORY

*Trader Joe's Lease*

Trader Joe's operates a grocery store in Goleta's Calle Real Shopping Center. Cal Real and Hill own the shopping center and Towbes manages its day-to-day operations. This opinion refers to Cal Real, Hill, and Towbes collectively as the "Landlords."

Trader Joe's occupies the building pursuant to a lease dated February 25, 2000 (Lease). The Lease refers to the area used by Trader Joe's as the "Premises." Customers enter through sliding glass doors that face the parking lot. The Lease describes the pedestrian sidewalk in front of the store as a common area shared by all tenants of the shopping center and their customers. It permits Trader Joe's to display items for sale on the store-

2

adjacent sidewalk, or "Outdoor Sales Area," provided the displays do not obstruct pedestrian access.

The Lease contains mutual indemnity provisions. Trader Joe's must indemnify Landlords "with respect to its use and occupancy of the Premises" for actions arising "out of any act or omission" of Trader Joe's. Landlords must indemnify Trader Joe's "with respect to . . . the manner of construction and the design of the Common Area" for actions arising "out of any act or omission" of the Landlords. Both must obtain commercial general liability (CGL) insurance that includes contractual liability coverage "recognizing and insuring" their indemnity obligations. Trader Joe's policy must name Landlords as additional insureds. The Landlord's policy, however, need not name Trader Joe's as additional insureds. The Lease allows Trader Joe's to self-insure CGL so long as it maintains a net worth of $30 million and agrees to pay "any such deductibles or self-insurance to the party or parties entitled to the proceeds" under the Lease.

*The Incident*

Matthew Quirk was entering Trader Joe's when a red Prius pulled into the parking stall in front of the store. The driver drove too far forward and lodged the car's undercarriage on the concrete bumper block. Quirk turned and watched from the sidewalk as the driver tried to dislodge his car. It suddenly reversed out of the stall and backed into a parked car. The Prius briefly came to a rest before accelerating back toward Quirk. It re-entered the same stall, jumped the block and curb, and struck him on the sidewalk. He fell onto the hood as it crashed through the store's glass doors and into the cash registers.

Quirk's right leg was severely injured. He underwent two surgeries and remained hospitalized for a week. Investigators determined the driver mistook the accelerator pedal for the brake while trying to dislodge his car from the bumper block. This caused him to reverse unexpectedly out of the stall and into the car behind him. Believing his foot still firmly on the brake, he then selected "drive" with the gearshift. This launched the Prius back toward the parking stall and into the store.

Trader Joe's and the Landlords later amended the Lease to allow Trader Joe's to install bollards (embedded poles) along the curb to avoid future incursions.

### The Quirk Action

Quirk sued the driver, the Landlords, and Trader Joe's for negligence. His wife sued for loss of consortium. Quirk alleged Trader Joe's and the Landlords failed to put "adequate vehicle barriers in place to protect against errant vehicles intruding into the pedestrian path" in front of the store. This "caused a dangerous condition that created a substantial risk of the type of injury" he suffered.

Trader Joe's had an excess CGL policy issued by Ace American Insurance Company (Ace) in effect at the time of the incident. The policy's limits were $2 million subject to a $350,000 self-insured retention.

### Trader Joe's Tenders to the Landlords

Trader Joe's tendered the Quirk action to the Landlords. The tender letter identified the Landlords as responsible for the claim because the incident occurred in a common area, i.e., the parking lot and sidewalk in front of the store. The Landlords accepted the tender. Sequoia Insurance Company (Sequoia), the Landlords' CGL insurer, agreed to defend the Quirk action while

4

it determined whether its policy covered Trader Joe's. Sequoia later denied any coverage obligation but agreed to provide a "courtesy defense" under a full reservation of rights. Trader Joe's then cross-complained against the Landlords for indemnity and contribution.

*Settlement of Quirk Action*

The Quirks dismissed the driver early in litigation after accepting policy limits from his insurance company. The Landlords and Trader Joe's later settled with the Quirks for $2.5 million. Each agreed to pay $1.25 million subject to a funding agreement that reserved their rights to "mediate, arbitrate or litigate the questions of their respective duties with regard to indemnity under the terms of the Lease . . . at a later date." Trader Joe's notified Ace of the settlement but opted to pay its contribution out of pocket.

The Quirks dismissed their complaint, leaving only Trader Joe's cross-claims against the Landlords pending. The Landlords cross-complained against Trader Joe's when they could not resolve their disputes over liability and indemnity. Sequoia filed a separate subrogation action against Ace contending the Landlords qualified as additional insureds under those policies (*Sequoia* action).[1]

*Trial on Indemnity Cross-Actions*

The Landlords and Trader Joe's stipulated to a bench trial on their cross-complaints for indemnity. They further agreed to proceed on briefs in lieu of live testimony. Each filed opening, opposition, and reply briefs along with several dozen exhibits.

---

[1] *Sequoia Ins. Co., et al. v. Ace American Ins. Co.* (Super. Ct. Santa Barbara County, 2021, No. 21CV03048).

This included deposition excerpts, discovery responses, and documents related to the Lease and insurance.

Trader Joe's briefs focused on whether adequate barriers would have prevented the incident. It introduced evidence of two previous vehicle incursions at the shopping center. It previously requested the Landlords install bollards at the recommendation of a civil engineer hired to assess pedestrian safety in common areas. This showed the Landlords knew a dangerous condition existed at the shopping center. Quirk's injuries, it followed, arose from an "act or omission" of the Landlords relating to "the manner of construction and design of the Common Area." Trader Joe's demanded the Landlords reimburse its $1.25 million settlement contribution under the Lease's indemnity provision.

The Landlords' briefs focused on the Lease's "insurance-procurement clause," i.e., the unilateral requirement that Trader Joe's list the Landlords as additional insureds on its CGL policy. They accused Trader Joe's of violating this provision by not "extend[ing] any protection to the Landlords" before they settled with the Quirks. Ace subsequently denied coverage to the Landlords. The Landlords argued the procurement clause "effectively superseded" the Lease's mutual indemnity obligations, such that Trader Joe's and its insurer should have paid the entire $2.5 million settlement regardless of the Landlord's comparative fault. The Landlords likewise sought reimbursement of their $1.25 million contribution.

*Statement of Decision*

The trial court found the Landlords were actively negligent and rejected their argument that Trader Joe's failed to procure adequate insurance. The statement of decision awarded Trader Joe's express indemnity of $1.25 million plus attorney's fees and

6

prejudgment interest. The trial court later awarded attorney's fees of $192,439.50. It stayed execution of the judgment pending appeal. The *Sequoia* action was likewise stayed.

DISCUSSION

The Landlords concede the trial court's finding of active negligence on their part. They contend the trial court nevertheless erred when it ordered them to indemnify Trader Joe's for its $1.25 million contribution to the Quirk settlement. Among the Landlords' contentions are the following: (1) Trader Joe's owes them $350,000 as within its self-insured retention pursuant to *Chevron U.S.A., Inc. v. Bragg Crane & Rigging Co.* (1986) 180 Cal.App.3d 639 (*Chevron*); (2) Trader Joe's breached its obligation under the Lease to insure the Landlords for the $900,000 above its self-insured retention; and (3) Trader Joe's own active negligence precluded recovery from the Landlords under the Lease's indemnity provision.[2] The Landlords request we reverse the judgment, vacate the post-judgment attorney fees award, and direct entry of judgment in their favor for $1.25 million plus their defense costs.

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; see *Citizens Business Bank*

---

[2] The Landlords argue additional points in briefing. We considered and rejected those not discussed here.

7

*v. Gevorgian* (2013) 218 Cal.App.4th 602, 613 [substantial evidence standard of review applies to express and implied findings of fact in a statement of decision].)

*Self-Insured Retention*

Trader's Joes Ace CGL policy sits above a $350,000 self-insured retention. The Landlords characterize the retention as a coverage gap because the Lease required Trader Joe's to procure a policy covering all damages up to $2 million. They analogize this case to *Chevron*, where a crane company agreed to insure Chevron for all liabilities arising from crane services it provided at an oil refinery. The crane company bought a policy with a $100,000 deductible. This required Chevron to settle out-of-pocket with a crane worker injured by a fuel pump leak at its refinery. The court held that when a party agrees to procure insurance for another party, but procures a policy with a deductible, the first party is liable for the insurance the other party would have received absent the deductible. (*Chevron*, *supra*, 180 Cal.App.3d at p. 646.) It affirmed judgment in favor of Chevron for the amount paid to the injured worker. (*Id.*, at p. 648.)

*Chevron* is not persuasive for at least two reasons. First, the Lease expressly allows Trader Joe's to self-insure "through deductibles, retention limits or straight self-insurance." Second, the indemnity and insurance obligations in *Chevron* were placed squarely on one of the contracting parties. The contract broadly relieved Chevron of any responsibility for damages resulting directly or indirectly from the crane company's services. The Lease here, in contrast, contains mutual indemnity provisions creating two categories of liabilities: (1) those arising out of Trader Joe's acts and omissions, and (2) those arising out of the

8

Landlord's acts and omissions. It requires each to insure their respective indemnity obligations and, further, defines those obligations in terms of the physical spaces occupied, used, and maintained by the parties. Trader Joe's duty to insure extends only to those liabilities "arising or alleged to have arisen out of any act or omission" of Trader Joe's. The comprehensive, clear, and unilateral risk-shifting provisions present in *Chevron* are not present here. The trial court properly declined to apply that case's remedy under these circumstances. (Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"].)

The Landlords also cite *Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619 (*Amco*) as supporting their claim to the ACE retention. *Amco* arose from injuries caused by a car crashing into a restaurant. The landlord's CGL insurer settled with two injured customers. The trial court ordered the restaurant's insurer to pay half the settlement and defense costs because the landlord was listed as an additional insured on the restaurant's CGL policy. The restaurant's insurer appealed, arguing the landlords were not additional insureds because the incident did not arise from the tenant's "use" of the building as a restaurant. *Amco* agreed the landlord was covered by the restaurant's policy and affirmed the trial court's award of equitable contribution.

*Amco* does not help Landlords' claim either. The landlords in that case did not expressly agree to indemnify the tenant for liabilities arising from the construction or design of the building and its environs. More fundamentally, this is not an insurance coverage case. The trial court considered coverage only

9

superficially when deciding whether Trader Joe's complied with the Lease's insurance procurement clause. Whether Trader Joes's insurer must reimburse the Landlords' insurers for their settlement payment and costs of defense is the province of the *Sequoia* action.

### *Amounts Above Self-Insured Retention*

The Landlords contend Trader Joe's breached its obligation to insure the Landlords for the $900,000 above its self-insured retention by failing to list them as additional insureds on the Ace policy. The record contradicts this contention. Endorsement 2 to the Ace policy defines an insured as "[a]ny Manager or Lessor of premises leased to you whom you have agreed to include as an additional insured under a written contract" predating the policy. The Landlords fall within this category. Whether Ace must indemnify the Landlords and their insurers, as stated above, is a question left to the *Sequoia* action. Our review is limited to the trial court's finding that Trader Joe's complied with this provision of the lease. Substantial evidence supports that finding.

### *Trader Joe's Active Negligence*

The Landlords contend Trader Joe's own active negligence precludes it from seeking contractual indemnity. (See *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 628, italics omitted [general indemnity clause "will not be interpreted to provide indemnity if an indemnitee has been actively negligent"].) They point to evidence that Trader Joe's knew about the risk of vehicle incursions at the Goleta store as early as 2014 but failed to install bollards itself, instead insisting the Landlords' install them at their own expense.

10

The trial court found: (a) Trader Joe's could not install the bollards without the Landlord's authorization; (b) Trader Joe's requested the Landlords install them more than a year before the incident; and (c) Landlords had not yet done so at the time of the incident. The Landlords reargue the evidence on appeal to prove Trader Joe's shares blame for the incident. We decline to reassess the trial court's fact-intensive analysis and reweigh the oral and documentary evidence underpinning it. We also reject the Landlords' assertion that the trial court failed to make necessary findings as to Trader Joe's negligence. The statement of decision need not state its reasoning any clearer—Quirk's injuries resulted from a dangerous condition in an area within the Landlords' exclusive control.

*Award of Attorney's Fees to Trader Joes*

The Landlords request we reverse the post-judgment order awarding attorney's fees in the event we reverse the judgment. They do not challenge the order on its merits. We affirm the judgment and likewise affirm the award of attorney's fees.

DISPOSITION

The judgment and post-judgment order awarding attorney's fees are affirmed. Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

11

GILBERT, P. J.


YEGAN, J.

Donna D. Geck, Judge
Superior Court County of Santa Barbara
_____

Nielsen Katibah, James C. Nielsen, Daniel Katibah, and Megan W. Wendell; Wood, Smith, Henning & Berman, Phillip V. Tiberi, for Cross-defendants, Cross-complainants, and Appellants.

DLA Piper, Justin R. Sarno; MVPF Law, Kristin Mathis; DBL Law Group, Darren Le Montree, for Cross-complainant, Cross-defendant, and Respondent.