Filed 5/8/25  Rogers v. NES Global CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DARRYL ROGERS,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>NES GLOBAL, LLC,<br><br>  Defendant and Appellant. | F088374<br><br>(Super. Ct. No. BCV-23-103371)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Jackson Lewis, Dylan B. Carp, Nicky Jatana, Eric J. Gitig and Jing Tong for Defendant and Appellant.

Josephson Dunlap and William M. Hogg for Plaintiff and Respondent.

-ooOoo-

This is an employment related dispute between plaintiff and respondent Darryl Rogers (Rogers) and his former employer defendant and appellant NES Global, LLC (NES).  The trial court denied a motion to compel arbitration by NES on two grounds.  First, the court found that no agreement to arbitrate existed between Rogers and NES.  Second, and in the alternative, the court found that Rogers's claims were outside

the scope of the purported arbitration agreement. NES now appeals the denial of its motion. We conclude the court incorrectly determined that no agreement to arbitrate existed, but correctly determined that Rogers's claims were outside the scope of the purported agreement. Accordingly, we affirm.

## PROCEDURAL BACKGROUND

On October 9, 2023, Rogers filed a class action lawsuit (the Complaint) in the Kern County Superior Court against NES. Rogers, individually and on behalf of others similarly situated, alleged four statutory claims: failure to pay overtime (Lab. Code, §§ 510, 1194), failure to provide a timely and accurate wage statement (Lab. Code, § 226), waiting time penalties/failure to timely pay final wages upon separation (Lab. Code, §§ 201−203), and unfair competition (Bus. & Prof. Code, § 17200 et seq.). The Complaint alleged that Rogers was not paid for overtime, even though he did not meet a requirement under 29 Code of Federal Regulations part 541.604 (2024) (section 604) for an exemption, and was instead paid a "straight time" rate of $75 for all hours worked over 40 hours per week. The Complaint alleged that the failure to pay overtime also led to NES's failure to provide an accurate wage statement and failure to timely and fully pay Rogers upon separation.

On May 28, 2024, NES filed a joint motion to compel arbitration and dismiss all of Rogers's putative class claims.

Oral argument on the joint motion was held on July 11, 2024. The trial court held that NES failed to meet its burden to show an arbitration agreement existed with Rogers and, alternatively, that Rogers's statutory claims fell outside the scope of the arbitration agreement.

On July 24, 2024, NES appealed the denial of its motion to compel.

## FACTUAL BACKGROUND

NES is a staffing provider that provides engineers and technical workers to technology and energy related companies. From April 18 to July 22, 2022, NES

2.

employed Rogers as a commissioning engineer and assigned him to work for a client in Bakersfield.

Prior to beginning employment, NES sent Rogers a "CONTRACT OFFER LETTER" (COL). The COL identified the "Parties" as "Company" and "Personnel." In turn, "Company" was defined as NES, and "Personnel" was defined as Rogers. The COL included a number of terms, including compensation and pay structure, hours of work, duration of the Bakersfield assignment, and training. The COL also stated that Rogers was considered an "exempt employee" under federal and California law and thus, he was not entitled to overtime pay but was entitled to meal and rest breaks under California law. The COL provided that Rogers would be paid a "Retainer" of $1,425, which equaled $75 per hour for 19 hours, for any time worked in a week. For any amount of time worked in excess of 19 hours, the COL provided that Rogers would be paid $75 per hour. The COL also explained that the offer of employment was "made subject to the Company's Terms of Business and attached Appendix(es)," and included a line that read: "I agree with and accept Company's [COL], together with the Terms of Business and the attached Appendix(es)." The COL included four appendices, and a document entitled "TERMS OF BUSINESS FOR THE SUPPLY OF SERVICES BY A TEMPORARY WORKER TO THE CLIENT" (TOB). Rogers signed the COL on April 13, 2022.

The TOB stated in part that, in case of a conflict between documents, the order of precedence for resolving the conflict was the COL, followed by the TOB, followed by other "Documents." The TOB included a definition section that in part defined "Company" as NES; "Personnel" as Rogers; "Law" as "any and all laws of the country in which the Company is incorporated including any legislative or regulatory provisions"; and "Assignment Contract" as "the contract between the Company and the Personnel for the execution of Services by the Personnel and comprises of the [COL], these [TOB,] and the Appendices." In relevant part, the TOB contained two undefined paragraphs under a section entitled "General." Paragraph 16.11 of the TOB (Paragraph 16.11) read:

3.

"The construction, validity and performance of this Assignment Contract including any disputes or claims in connection with it or its subject matter shall be governed by the Law and the Parties irrevocably submit to the exclusive jurisdiction of the courts of the country in which the Company is incorporated save that the Company may seek interim injunctive relief in any court worldwide accepting jurisdiction in relation to the protection of the Company's and/or Client's IPR and/or Confidential Information. The Personnel irrevocably acknowledges that it is contracting with the Company and that its only cause of action shall be against the Company and not against any other member of the NES Group of companies."

Next, in all capital letters, paragraph 16.12 of the TOB (Paragraph 16.12) read:

"Company and Contractor are each giving up the right to a jury trial and the right to participate in a class action for all disputes required to be submitted to arbitration and such disputes arising under this agreement will be resolved exclusively through arbitration. Additionally, the Parties agree that for all disputes required to be submitted to arbitration pursuant to this section, Company and Contractor shall each bring such disputes against the other only in an individual capacity and not as a plaintiff or class member in any purported class or representative proceeding."

## DISCUSSION

### I.     Agreement to Arbitrate

#### A.     Parties' Arguments

NES argues the trial court erred by finding that no arbitration agreement exists. NES explains that the purpose of the contract is to define the relationship between itself and Rogers and the most reasonable interpretation of the arbitration agreement is to recognize that Rogers is the "Contractor." NES also argues that the term "Contractor" is used in three other sections of the employment contract and that adopting the court's interpretation would render Paragraph 16.12 meaningless surplusage.

Rogers argues that the trial court did not err. Rogers argues that the COL and TOB expressly defined Rogers as "Personnel" but did not define the term "Contractor." The most reasonable interpretation of the TOB is that it means what is says, "Personnel" means Rogers and "Contractor" does not. Rogers argues that interpreting "Contractor" to

4.

mean someone other than Rogers does not render Paragraph 16.12 surplusage, it simply means that Paragraph 16.12 does not impose duties on him. Rogers also argues that it does not make sense that Paragraph 16.11 would use the term "Personnel" when submitting to the exclusive jurisdiction of a court, but then use the term "Contractor" to negate that submission by waiving a jury trial in favor of arbitration.

As to this issue, we agree with NES.

### B. Legal Standards

Before a trial court may order parties to arbitration, the court must determine the threshold question of whether a valid agreement to arbitrate exists. (*Casa Del Caffe Vergnano S.P.A. v. Italflavors San Diego, LLC* (9th Cir. 2016) 816 F.3d 1208, 1211; *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843–844.) The party seeking to compel arbitration bears the burden of establishing a valid agreement to arbitrate by a preponderance of the evidence. (See *Engalla v. Permanente Med. Grp., Inc.* (1997) 15 Cal.4th 951, 972; *Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1195 (*Jones*).) General principles of California contract law apply to determine the existence of a valid agreement to arbitrate. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle Museum*); *B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 943; *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1170 (*Mitri*).) Mutual assent or consent, meaning that the parties agreed to the same thing in the same sense, is essential to the existence of a binding arbitration agreement. (*Doe v. Massage Envy Franchising, LLC* (2022) 87 Cal.App.5th 23, 30; *B.D.*, at p. 943.) Further, courts interpret an arbitration agreement so as to give effect to the parties' intentions. (*Flores v. Nature's Best Distribution, LLC* (2017) 7 Cal.App.5th 1, 9 (*Flores*); *Mitri*, at p. 1170.) Thus, " 'a contract entered into for the mutual benefit of the parties is to be interpreted so as to give effect to the main purpose of the contract … .' " (*Strong v. Theis* (1986) 187 Cal.App.3d 913, 918 (*Strong*), italics omitted; *Chevron U.S.A. v. Bragg Crane & Rigging Co.* (1986)

5.

180 Cal.App.3d 639, 644 (*Chevron*).) Unless given a special meaning by the parties, the words of an arbitration agreement are interpreted in their usual and ordinary meaning and should be considered in light of the circumstance under which the agreement was made. (*Bunker Hill Park Ltd. v. U.S. Bank National Assn.* (2014) 231 Cal.App.4th 1315, 1327; see also *Mitri*, at p. 1170.) The whole of the agreement is "to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641; *Flores*, at p. 9; *Mitri*, at p. 1170.)

"When a trial court's order denying arbitration is based on the finding that the appellant failed to carry its burden of proof, the question on appeal is whether that finding is erroneous as a matter of law." (*Jones, supra,* 99 Cal.App.5th at pp. 1195–1196.) " 'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978–979; see *Jones*, at p. 1196.) However, if " 'the evidence is not in conflict, we review the trial court's denial of arbitration de novo.' " (*Pinnacle Museum*, *supra*, 55 Cal.4th at p. 236; *Mar v. Perkins* (2024) 102 Cal.App.5th 201, 211 (*Mar*).)

### C. Analysis

#### 1. Applicable Standard of Review

Initially, the parties disagree as to the appropriate standard of review, either de novo or erroneous as a matter of law. The record indicates that the trial court sua sponte held that no agreement to arbitrate existed. There was no testimony taken on the existence of an agreement, nor were there any conflicting declarations or other evidence submitted regarding the existence of an agreement. Instead, the issue was decided based only on an evaluation of the COL, the TOB, and the four appendices (collectively the Contract). In other words, the issue was decided based entirely on undisputed evidence.

6.

For this reason, we conclude that the correct standard of review is de novo.[1]  (*Pinnacle Museum*, *supra*, 55 Cal.4th at p. 236; *Mar*, *supra*, 102 Cal.App.5th at p. 211.)

## 2.    Existence of an Agreement to Arbitrate

The basis of the trial court's conclusion that no agreement to arbitrate existed is the definitions employed by the Contract.  The arbitration agreement in Paragraph 16.12 states that it is between "the Company" and "the Contractor."  "Contractor" is nowhere defined in the Contract, but the COL and the TOB expressly define Rogers as "Personnel."  Although we certainly see the appeal of focusing on these definitions, when the Contract is viewed as a whole (Civ. Code, § 1641; *Mitri, supra,* 157 Cal.App.4th at p. 1170), it is apparent that the term "Contractor" refers to Rogers.

First, the TOB is part of the Contract, and the purpose of the Contract was to create and define the scope of an employment relationship between NES and Rogers.  The Contract has no signature blocks for any entities other than NES and Rogers.  It is unknown why a clause between "the Company" and "the Contractor" would be inserted into an employment contract between Rogers and NES if the clause did not actually relate to Rogers.  To interpret the term "Contractor" as referring to someone other than Rogers would not further the purpose of the Contract.  In contrast, interpreting the term "Contractor" in Paragraph 16.12 to refer to Rogers is perfectly consistent with an employment relationship.  It is common for employers and employees to agree to resolve disputes through arbitration.  (E.g. *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1241.)  Therefore, NES's interpretation is more consistent with the purpose of the Contract.  (*Strong*, *supra*, 187 Cal.App.3d at p. 918; *Chevron, supra,* 180 Cal.App.3d at p. 644; see also Civ. Code, § 1636 ["A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed[.]"]; *Flores, supra*, 7 Cal.App.5th at p. 9.)

---

[1] However, even if the standard of review is erroneous as a matter of law, the result would not change.

7.

Second, and relatedly, Rogers's interpretation of Paragraph 16.12 would impose a duty on NES to resolve through arbitration certain disputes it may have with an undisclosed third party but would impose no duties or obligations on Rogers. The point of such a clause within the Contract would be completely unknown. Indeed, although Rogers acknowledges that his interpretation would free him of any obligations under Paragraph 16.12, he conspicuously does not explain what function Paragraph 16.12 would then serve within the Contract. In contrast, interpreting the term "Contractor" to refer to Rogers would give Paragraph 16.12 meaning and purpose in that it would impose a mutual obligation on NES and Rogers to resolve through arbitration certain disputes that may arise between them. Interpretations that render a contractual provision surplusage should generally be avoided. (Civ. Code, § 1641; *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503 (*Boghos*) [noting that "constructions of contractual provisions that would render other provisions surplusage" are disfavored]; *Rice v. Downs* (2016) 248 Cal.App.4th 175, 185 (*Rice*) ["An interpretation that leaves part of a contract as surplusage is to be avoided."].) Because it would render Paragraph 16.12 entirely nugatory, Rogers's argument is not persuasive. (Civ. Code, § 1641; *Boghos*, at p. 503; *Rice*, at p. 185.)

Finally, the Contract uses the term "Contractor" in sections 5.2 and 6.2 of the TOB and in appendix D. Generally, identical terms used in an agreement should be given the same meaning throughout the agreement. (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 475; *Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1069; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 525.) A review of these sections confirms that their use of "Contractor" refers to Rogers, and Rogers himself does not contend otherwise. Section 5.2 provides for the submission and payment of "Authorized Expense Claims," which are certain expenses authorized by the client to be paid to "the Personnel" directly by "the Company." The "Personnel" are to submit "Authorized Expense Claims" to NES

8.

on "the first Monday of every month (or such other time as the Company notifies the Contractor in advance) so it can be verified and processed for payment." Because "Personnel" are to submit these claims for direct payment from NES, the term "Contractor" would refer to Rogers. Similarly, section 6.2 is part of section 6, which is entitled "PAYMENTS TO THE PERSONNEL." Section 6.2 requires the "Company" to "make payment to the Contractor by bank transfer and such bank transfer will be processed in accordance with the Pay Schedule." At other points throughout section 6, the term "Personnel" is used. Nevertheless, the substance of section 6.2 clearly shows that "Contractor" refers to Rogers. Finally, appendix D is the "CONTRACTOR SAFETY, HEALTH, AND ENVIRONMENTAL (SHE) POLICY." Appendix D states that the "safety and health of our contractor workforce is of paramount importance." Appendix D then addresses responsibilities that NES has with respect to safety, health, and environmental concerns, as well as "CONTRACTOR RESPONSIBILITIES." Several of appendix D's responsibilities are noteworthy for purposes of this appeal. NES is obligated to bring SHE arrangements to the attention "of both client and contractor," while "Contractors" are obligated to cooperate with NES and "the client to ensure compliance with their SHE duties" and to report all "accidents and incidents" to "the Client and [NES]." Even though the term "Personnel" is never used in appendix D, the term "Contractor" as used in appendix D clearly refers to members of NES's workforce, including Rogers. Accordingly, because the term "Contractor" refers to Rogers in sections 5.2, 6.2, and appendix D, the term "Contractor" as used in Paragraph 16.12 should be given the same meaning. (*E.M.M.I.*, at p. 475; *Mirpad*, at p. 1069; *People ex rel. Lockyer*, at p. 525.)

Rogers contends that interpreting "Contractor" in Paragraph 16.12 to refer to him would be inconsistent with Paragraph 16.11 and render that paragraph surplusage. We disagree and believe that Paragraph 16.11 and Paragraph 16.12 can be read together in such a manner as to give effect to the personal jurisdiction and venue clause.

Paragraph 16.11 has three clauses, one of which is relevant to Rogers's argument. Paragraph 16.11's second clause is a personal jurisdiction and venue provision in which NES and Rogers "submit[ted] to the exclusive jurisdiction of the [trial] courts of the country in which [NES] is incorporated[.]" As explained below, Paragraph 16.12 is a narrow arbitration clause. Therefore, the second clause of Paragraph 16.11 can be read as establishing venue and personal jurisdiction in American courts for claims that fall outside of the arbitration clause. Additionally, for claims or disputes that fall within the scope of Paragraph 16.12's arbitration clause, Paragraph 16.11 still has meaning and purpose because it establishes venue and personal jurisdiction in American courts in order for a party to compel arbitration or enforce an arbitration award. (*Boghos, supra,* 36 Cal.4th at p. 503.) For these reasons, defining the term "Contractor" as referring to Rogers does not render Paragraph 16.11 surplusage.

In sum, based on the entirety of the Contract, we conclude that the term "Contractor" as used in Paragraph 16.12 refers to Rogers. Because Rogers is the "Contractor" of Paragraph 16.12, the trial court erred by concluding there was no agreement to arbitrate.

## II.     Scope of Arbitration Agreement

### A.     Parties' Arguments

NES argues that the trial court erred because the arbitration clause is broad, has no limitations, and encompasses Rogers's claims. However, even if the arbitration clause is narrow, Rogers's claims involve issues of contract interpretation and performance. NES contends that to resolve Rogers's claims, the Contract must be interpreted to see if it complies with part of an overtime pay exemption under section 604. Because Rogers cannot demonstrate that his claims are outside the scope of the arbitration agreement, NES argues arbitration must be ordered.

Rogers argues that the trial court did not err. Rogers argues the scope of Paragraph 16.12's arbitration clause is narrow and applies only to disputes relating to the

10.

interpretation and performance of the Contract. Rogers argues that the claims alleged do not arise under the Contract, rather, they arise under the Labor Code. Therefore, Rogers argues that the court correctly determined that his claims were outside the scope of the arbitration clause.

We agree with Rogers.

### B. Legal Standard

"Once an agreement to arbitrate is established, the party opposing arbitration has the burden to show the arbitration provision does not encompass the claims in the complaint." (*Maxwell v. Atria Management Co., LLC* (2024) 105 Cal.App.5th 230, 241–242; see *Rice*, *supra*, 248 Cal.App.4th at p. 185.) Whether a particular dispute is subject to arbitration substantially rests on whether an arbitration clause is considered broad or narrow. (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 688 (*Ahern*); *Rice*, at p. 185.) Trial courts apply ordinary principles of contract interpretation to establish the scope of an arbitration agreement. (*Laymon v. J. Rockcliff, Inc.* (2017) 12 Cal.App.5th 812, 819; *Rice*, at p. 185.) Courts are to give effect to the parties' intentions by considering the ordinary meaning of the agreement's language and the circumstances under which the agreement was made. (*Ahern*, at p. 687; *Laymon*, at p. 819; *Rice*, at p. 185.) Arbitration is a favored procedure under both federal and California law. (*Marmet Health Care Ctr., Inc. v. Brown* (2012) 565 U.S. 530, 533; *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) As a result, arbitration should be ordered unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute. (*Ahern*, at p. 688; *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 355.) Thus, " 'any reasonable doubt as to whether a claim falls within the arbitration clause is to be resolved in favor of arbitration.' " (*Victrola 89*, at p. 356.) Nevertheless, for arbitration to be ordered, the terms of the arbitration clause still must reasonably cover the dispute in question. (*Ahern*, at p. 688; *Rice*, at p. 186; see also *Victrola 89*, at pp. 356–357.) When there is no factual

11.

dispute as to the language of an agreement or conflicting extrinsic evidence as to an agreement's terms, the scope of an arbitration provision is reviewed de novo on appeal. (See *Victrola 89*, at p. 355; *Laymon*, at p. 819.)

### C.       Analysis

#### 1.       Scope of the Arbitration Clause

Recent California appellate cases have addressed the scope of different types of arbitration clauses.  Arbitration clauses that use language such as "any claims arising from or related to this agreement" or "arising in connection with the agreement" are considered to be broad clauses.  (See *Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 220 (*Vaughn*); *Ahern*, *supra*, 74 Cal.App.5th at p. 689; *Howard v. Goldbloom* (2018) 30 Cal.App.5th 659, 663, 667 (*Howard*); *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1052 (*Ramos*); *Rice*, *supra*, 248 Cal.App.4th at p. 186.)  Arbitration clauses that use language such as "arising from," "arising out of," or "arising under," standing alone and without additional language such as "relating to this agreement" or "in connection with this agreement," are considered to be narrow clauses.  (See *Vauhgn*, at p. 221; *Ahern*, at p. 689; *Howard*, at pp. 664, 667; *Ramos*, at p. 1052; *Rice*, at pp. 186–187.) These narrow arbitration clauses " 'encompass only disputes relating to the interpretation and performance of the agreement.' " (*Ahern*, at pp. 689–690; *Rice*, at p. 187; see *Vaughn*, at p. 221; *Howard*, at p. 664; *Ramos*, at p. 1052.)

Here, the Paragraph 16.12 arbitration clause provides:  "[S]uch *disputes arising under this agreement* will be resolved exclusively through arbitration."  Unlike Paragraph 16.11 which in part uses the phrase "in connection with [the Contract]," Paragraph 16.12 includes no expansive language in addition to the phrase "arising under."  Because Paragraph 16.12's arbitration clause uses only the phrase "arising under," it is a narrow clause.  (*Vaughn*, *supra*, 87 Cal.App.5th at p. 221; *Ahern*, *supra*, 74 Cal.App.5th at pp. 689–690; *Howard*, *supra*, 30 Cal.App.5th at pp. 664, 667; *Ramos*, *supra*, 28 Cal.App.5th at p. 1052; *Rice*, 248 Cal.App.4th at pp. 186–187.)  As a result, to

be within the clause's scope, Rogers's claims must relate " 'to the interpretation and performance of the agreement.' " (*Ahern*, at pp. 689–690; *Rice*, at pp. 186–187; see *Vaughn*, at p. 221; *Howard*, at p. 664; *Ramos*, at p. 1052.)

NES contends that, under *EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, the Contract's arbitration clause is actually broad. The arbitration clause in *EFund* applied to " '[a]ny dispute or other disagreement arising from or out of [the agreement].' " (*Id.,* at p. 1317; see also *Rice*, *supra*, 248 Cal.App.4th at p. 190.) *Rice* has classified *EFund*'s arbitration clause as being "unusually worded" and expressed skepticism that *EFund* represented a change in California law. (*Rice*, at p. 190.) To the extent that *EFund* did represent a change in the law, *Rice* held that the parties did not take advantage of that change because they did not agree to an arbitration clause that was worded as *EFund*'s clause. (*Ibid*.) In our case, the Contract's arbitration clause also does not use the same language as the "unusually worded" clause in *EFund*. Instead, Paragraph 16.12 uses the phrase "arising under" alone. Because the Contract's arbitration clause does not use the wording of *EFund*, the analysis of *Rice* and its progeny controls. (*Id*., at pp. 186–187, 190; see also *Vaughn*, *supra*, 87 Cal.App.5th at p. 221; *Ahern*, *supra*, 74 Cal.App.5th at pp. 689–690; *Howard*, *supra*, 30 Cal.App.5th at pp. 664, 667; *Ramos*, 28 Cal.App.5th at p. 1052.)

NES also relies on *Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186 and *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677 to argue that Paragraph 16.12's arbitration clause is broad. However, in both of these cases, the arbitration clauses did not simply provide for arbitration of disputes "arising under" an agreement. In *Vianna*, the arbitration clause provided: " '[i]n the event of any dispute of any kind whatsoever, regarding the meaning, interpretation or enforcement of the provisions of this Agreement[.]' " (*Vianna*, at p. 1188.) In *Coast Plaza*, the arbitration clause provided: "*Any problem or dispute arising under this agreement and/or concerning the terms of this Agreement … shall be arbitrated*." (*Coast*

13.

*Plaza*, at p. 681, fn. 2.) Because the clauses in *Vianna* and *Coast Plaza* do not simply use the phrase "arising under," the clauses are broader than, and insufficiently comparable to, Paragraph 16.12. Accordingly, we conclude the analysis of *Rice* and its progeny controls. (*Rice*, *supra*, 248 Cal.App.4th at pp. 186–188, 190; see also *Vaughn*, *supra*, 87 Cal.App.5th at p. 221; *Ahern*, *supra*, 74 Cal.App.5th at pp. 689–690; *Howard*, *supra*, 30 Cal.App.5th at pp. 664, 667; *Ramos*, 28 Cal.App.5th at p. 1052.)

In sum, Paragraph 16.12's arbitration clause is a narrow clause. (*Rice*, *supra*, 248 Cal.App.4th at pp. 186–187, 190.)

### 2. Rogers's Claims

Rogers alleges only statutory claims, three violations of the Labor Code and one violation of the Unfair Competition Law (UCL). The Labor Code claims are all dependent on Rogers's entitlement to overtime. The UCL claim is based on and derivative of the Labor Code claims and will rise and fall with those claims. (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185.) Thus, the UCL claim also depends on Rogers's entitlement to overtime. The parties dispute Rogers's entitlement to overtime because they disagree about whether Rogers is actually an "exempt" employee under federal regulations. Based on the nature of Rogers's claims and the dispute between Rogers and NES, we conclude that Rogers's claims are not encompassed by the Paragraph 16.12 arbitration clause.

First, case law recognizes that the Labor Code imposes duties on employers that "[are] not derived from any contractual obligation" and that "arise independently of the terms of [a] plaintiff's employment contract." (*Soltero v. Precise Distribution, Inc.* (2024) 102 Cal.App.5th 887, 896, fn. 5 (*Soltero*); see also *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 21–23 (*Elijahjuan*).) Such independent obligations in the Labor Code include: (1) paying overtime compensation, (2) providing accurate wage statements, and (3) paying final wages within 72 hours of ending employment. (*Soltero*, at p. 896, fn. 5 [citing Lab. Code, §§ 201, 202, 203, 226, subd. (a), and 1194, subd. (a)].)

14.

These independent obligations are the three Labor Code claims alleged in counts one (failure to pay overtime), two (failure to provide an accurate wage statement), and three (failure to timely provide final pay) of the Complaint.

Second, case law also recognizes that an agreement's characterization of an employee's status or classification is not dispositive; rather, the key is whether the employee meets the legal criteria for the classification at issue. (*Elijahjuan*, *supra*, 210 Cal.App.4th at pp. 21, 23.) In this case, the parties dispute whether Rogers meets an exemption through section 604. Rogers's Complaint expressly alleges that he is actually a nonexempt employee and separately alleges that he does not meet the requirements of section 604, subdivision (b), while NES contends in its opening brief that Rogers is exempt under section 604, subdivision (a). "If an employee is paid a predetermined or guaranteed salary but receives additional compensation beyond that salary, the employer must comply with [section 604] to avoid losing the exemption." (*Wilson v. Schlumberger Technology Corp.* (10th Cir. 2023) 80 F.4th 1170, 1174.) Specifically, an employer must satisfy three tests: "(1) the 'job duties' test; (2) the 'salary level' test; and (3) the 'salary basis' test." (*Gentry v. Hamilton-Ryker IT Solutions, LLC* (5th Cir. 2024) 102 F.4th 712, 718 (*Gentry*).) As relevant here, there are two ways to meet the "salary basis" test, either through section 604, subdivision (a)[2] or section 604, subdivision (b).[3] (*Gentry*, at

---

[2] Section 604, subdivision (a) permits an employer to provide an exempt employee with "additional compensation" as long as "the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." (§ 604, subd. (a); *Gentry*, *supra*, 102 F.4th at p. 719.) Examples of "additional compensation" are commissions on sales, a percentage of sales or profits, or "additional compensation based on hours worked for work beyond the normal workweek." (§ 604, subd. (a); *Gentry*, at p. 719.)

[3] Section 604, subdivision (b) provides that an "exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship

15.

pp. 718–719.)  An employee's status as exempt from overtime pay is an affirmative defense of the employer.  (*Whiteside v. Hover-Davis, Inc.* (2d Cir. 2021) 995 F.3d 315, 322, fn. 6; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794–795; *Furry v. East Bay Publishing, LLC* (2018) 30 Cal.App.5th 1072, 1079.)  Therefore, whether Rogers is entitled to overtime ultimately depends on whether NES will be able to factually meet the requirements of the "job duties" test, the "salary level" test, and the "salary basis" test through either section 604, subdivision (a) or subdivision (b).  (§ 604; *Gentry*, at pp. 718−720; *Whiteside*, at p. 322, fn. 6; *Ramirez*, at pp. 794–795; *Elijahjuan*, at pp. 21, 23.)  Rogers's entitlement to overtime does not depend on how the Contract classifies Rogers, nor does it depend on whether NES performed as required by the Contract.  (*Elijahjuan*, at pp. 21, 23.)

Finally, and relatedly, the Complaint seeks to enforce rights afforded to Rogers under the Labor Code.  There are no claims that are based on rights afforded to Rogers under the terms of the Contract.  (*Elijahjuan*, *supra*, 210 Cal.App.4th at pp. 21, 23.)  To be sure, it is highly likely that the Contract will be consulted and used as evidence to prove or disprove various issues in this case, particularly exemption status in relation to section 604.  (*Elijahjuan*, at p. 21; see also *Narayan v. EGL, Inc.* (9th Cir. 2010) 616 F.3d 895, 899 (*Narayan*).)  However, whether Rogers is entitled to receive overtime or is exempt from the overtime laws pursuant to section 604 does not depend on the meaning of a particular contractual term, nor does it depend on how the Contract requires the

exists between the guaranteed amount and the amount actually earned."  (§ 604, subd. (b).)  The exemption under section 604, subdivision (b) applies "only if:  (1) [the employee] also receive a 'minimum weekly required amount paid on a salary basis,' and (2) there is a reasonable relationship between the weekly guaranteed salary and the employee's actual earnings."  (*Gentry*, *supra*, 102 F.4th at p. 720; see also *Helix Energy Solutions Group, Inc. v. Hewitt* (2023) 598 U.S. 39, 47.)  "The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek."  (§ 604, subd. (b); see also *Helix Energy*, at p. 47.)

parties to perform their contractual obligations to each other. Instead, the exemption and entitlement to overtime depend on evaluating Rogers's circumstances and the requirements and obligations of Labor Code section 510, Industrial Welfare Commission wage orders, and section 604, each of which are independent of the Contract. (See *Soltero, supra,* 102 Cal.App.5th at p. 896, fn. 5; *Elijahjuan*, at pp. 21, 23.)

NES argues that the Complaint's allegations show that Rogers's claims are based on contract performance because he alleges that NES "breached" the $1,425 weekly retainer obligation. We disagree. NES cites the following two paragraphs/allegations from the Complaint in support of its argument that a "breach of contract" is alleged: "NES does not pay its Straight Time Employees a guaranteed salary that is not subject to deduction based on the quality or quantity of work. [¶] If the Straight Time Employee worked fewer than 40 hours, NES only pays them for the hours they actually worked." However, the Complaint alleges immediately before these paragraphs that "NES never paid the Straight Time Employees on a 'salary basis.' " Also, immediately after these allegations, the Complaint alleges that to the extent "Straight Time Employees" are paid a weekly salary, the salary does not meet the " 'reasonable relationship' " test of section 604, subdivision (b). After providing an example in support of the assertion that the salary does not meet the " 'reasonable relationship' " test, the Complaint concludes that, "[i]n sum, Rogers and the Straight Time Employees are non-exempt employees and, therefore, entitled to premium overtime wages."

Accordingly, in context, it is apparent Rogers is alleging that section 604's requirements, and in particular section 604, subdivision (b), cannot be met, (cf. *Gentry*, *supra*, 102 F.4th at pp. 718–720); he is not alleging a breach of contract. This conclusion is confirmed by the fact that NES's cited paragraphs do not use the term "breach," the Complaint does not allege a claim for breach of contract, and the term "breach" or "breached" appears nowhere in the Complaint. Further, as explained above, Rogers's entitlement to overtime does not depend on whether NES adhered to the Contract; it

17.

depends on whether the legal criteria established in the Labor Code, wage orders, and federal regulations are met. Because Rogers is not alleging a breach of contract claim, he is not creating a dispute over the performance of the contract or pursuing claims that arise under the Contract.

NES also appears to argue that, because it contends two contractual provisions[4] mean that section 604, subdivision (a) applies to the employment relationship, but Rogers contends that those provisions mean that section 604, subdivision (b) applies (but whose requirements cannot be met), the Contract will have to be interpreted. We disagree with NES. The Complaint does not identify an ambiguous term within the Contract, nor does the Complaint allege that the parties have conflicting interpretations of a contractual term which would determine Rogers's entitlement to overtime pay or Rogers's status as a nonexempt employee. The Complaint also does not identify conflicting interpretations of the Contract about how Rogers is to be paid or what amounts Rogers is to be paid. Moreover, the Complaint does not allege that the language of the Contract must be interpreted to mean that only section 604, subdivision (b) could possibly have application to Rogers. Instead, the Complaint simply alleges that, despite NES's possible contentions to the contrary, the payments Rogers receives from NES do not meet any exemption, but particularly do not meet aspects of the section 604, subdivision (b) test. The dispute between the parties is not over the meaning of contractual provisions or whether the Contract means one exemption is mandated to the exclusion of another; the dispute is over whether Rogers is exempt from overtime payments. Whether Rogers is an exempt employee through section 604 does not depend on the interpretation of any terms

---

[4] The two contractual provisions cited by NES are: (1) "In a work week in which any time is worked, Personnel is entitled to a guaranteed weekly salary of USD $1,425.00, which equals to 19 hours of work in a particular work week at the hourly rate;" and (2) "In the event Personnel works more than [19 hours], Personnel will be paid on an Hourly Rate of USD $75.00 for all additional hours worked."

18.

in the Contract; it depends only on whether NES can factually show that the applicable regulatory tests, including section 604's "salary basis" test, are met. Despite its efforts, NES's arguments do not explain how the Contract will have to be interpreted to resolve the parties' dispute over overtime pay or exemption status. Again, while the Contract will surely be used as *evidence* to support findings regarding section 604 and overtime, that is not the same as alleging claims that require an *interpretation* of the Contract in order to be resolved. (*Elijahjuan*, *supra*, 210 Cal.App.4th at p. 21; see also *Narayan, supra,* 616 F.3d at p. 899.) Accordingly, because Rogers's claims will not involve the interpretation of the Contract, his statutory claims do not arise under the Contract.

In sum, because Rogers's statutory claims all arise under the Labor Code and are independent of the Contract, Rogers's claims are outside of the scope of Paragraph 16.12's arbitration clause. As a result, the trial court correctly denied NES's motion to compel arbitration.

## III. Class Action Waiver

The parties dispute the applicability of Paragraph 16.12's class action waiver. The plain language of Paragraph 16.12 shows that the class action waiver applies only to "disputes required to be submitted to arbitration pursuant to [Paragraph 16.12's arbitration clause.]" We have determined that the trial court correctly found Rogers's statutory claims do not fall within the narrow scope of the arbitration clause. Therefore, because Rogers's statutory claims are not required to be arbitrated pursuant to Paragraph 16.12, the class action waiver also does not apply to Rogers's statutory claims.

## DISPOSITION

The judgment is affirmed.  Rogers is awarded his costs on appeal.  This matter is remanded to the trial court for proceedings consistent with this opinion.



                                                      SNAUFFER, J.

WE CONCUR:


HILL, P. J.


DE SANTOS, J.

20.